UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAKDA XAYAKESONE,<br><br>                           Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary, U.S. Department of Homeland Security; PAMELA BONDI, Attorney General of the United States; TODD M. LYONS, Acting Director, Immigration and Customs Enforcement; JESUS ROCHA, Acting Field Office Director, San Diego Field Office; and CHRISTOPHER J. LAROSE, Senior Warden, Otay Mesa Detention Center, San Diego, California.<br><br>                           Respondents. | Case No.: 25-cv-2995-JES-BJW<br><br>**ORDER:**<br><br>**(1) GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241; and**<br><br>**(2) DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AS MOOT**<br><br>**[ECF Nos. 1, 3]** |

      Before the Court are Petitioner Sakda Xayakesone's ("Petitioner's") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and Motion for a Temporary Restraining Order. ECF Nos. 1 ("Pet."), 3 ("TRO"). The Petition and both Motions were filed on November 4, 2025. *Id.* For the reasons set forth below, the Court **GRANTS** the Petition and **DENIES** the motion for a TRO as moot.

# I. BACKGROUND

Petitioner is a citizen of Laos who was granted lawful permanent resident status when he arrived in the United States in 1979. Pet. at 4. In 2004, Petitioner was convicted of a drug-related offense and was subsequently placed in removal proceedings. *Id.*

On August 13, 2004, an immigration judge issued an order of removal against Petitioner. *Id.* However, ICE was unable to effectuate Petitioner's removal to Laos. *Id.* Petitioner was granted supervised release, and has since complied with all conditions of his supervised release. *Id.*

On October 16, 2025, ICE arrested Petitioner at his annual check-in appointment. *Id.* Respondents state that he was served with a Form I-200 Warrant for Arrest of Alien and a Notice of Revocation of Release that same day. ECF No. 7 at 3. While Petitioner initially stated that he was not given notice or opportunity to he heard regarding the revocation of his supervised release, he later conceded that Respondents did provide him a Notice of Revocation of Release. ECF Nos. 1 at 4; 9 at 2. On October 17, 2025, Petitioner received and did not sign a Form I-205, Warrant of Removal/Deportation. ECF. No. 9-2 at 3. Respondents state that ICE also issued a Form I-294, Warning to Alien Ordered Removed or Deported, and a Form I-213, Record of Deportable/ Inadmissible Alien. *Id.* Respondents state that ICE Enforcement and Removal Operations have submitted a travel document request for Petition to its international division, and that the request has been forwarded to a regional attaché. *Id.*

# II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas

corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kimi*, 538 U.S. 510, 517 (2003).

### III. DISCUSSION

As an initial matter, Respondents argue that the Court does not have jurisdiction over areas of immigration law, like the decision to initiate removal proceedings against an alien, designated by law to the executive branch. ECF No. 7 at 4-6. As discussed in other cases before this Court and in this District, the Court agrees with the government's underlying proposition but finds that it has jurisdiction to hear Petitioner's claims that his detention is unlawful. *See Sanchez v. Noem*, 25-cv-2995-JES-BJW, ECF No. 11 (S.D. Cal. Sept. 26, 2025); *Alegria Palma v. LaRose*, 25-cv-1942-BJC-MMP, ECF No. 14 (S.D. Cal. Aug. 11, 2025); *Mendez Los Santos v. LaRose*, 25-cv-2216-TWR-MSB, ECF No. 14 (S.D. Cal. Sept. 4, 2025) (granting petition by minute order); *Rokhifirooz v. LaRose et al.*, No. 25-cv-2053-RSH-VET, 2025 WL 2646165 (S.D. Cal Sept. 15, 2025).

Petitioner brings two claims to argue that he should be released from detention: (1) ICE failed to comply with its own procedures to re-detain him, in violation of the Fifth Amendment and the Administrative Procedures Act; and (2) Respondents are detaining him without a significant likelihood of removing him to Laos, in violation of *Zadvydas*, 8 U.S.C. § 1231(a)(6), and the Due Process Clause. Because the Court finds below that Claim 1 is meritorious and justifies Petitioner's release, the Court will only address this claim in this Order.

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 679. "Freedom from

imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690. A person at risk of suffering a serious loss being given notice and an opportunity to be heard, in a meaningful manner and at a meaningful time, is the essence of procedural due process. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The detention and release of noncitizens that are subject to a final order of removal is governed by 8 U.S.C. § 1231. This statute provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). "If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." *Id.* § 1231(a)(3).

Supervised release and any revocation of such release thereafter is governed by either 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13; *Diaz v. Wofford*, No. 1:25-CV-01079 JLT EPG, 2025 WL 2581575, at *4 (E.D. Cal. Sept. 5, 2025). Here, in Petitioner's case, the Notice of Revocation of Release cites to both regulations as the basis for his revocation. ECF No. 7-2 at 13. Revocation under § 241.4(l) provides two ways for supervised release to be revoked:

> (1) Violation of conditions of release. Any alien described in paragraph (a) or (b)(1) of this section who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody. Any such alien who violates the conditions of an order of supervision is subject to the penalties described in section 243(b) of the Act. Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.
>
> (2) Determination by the Service. The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the

>Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:
>
>>(i) The purposes of release have been served;
>>
>>(ii) The alien violates any condition of release;
>>
>>(iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
>>
>>(iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4(l). Revocation under § 241.13 similarly provides that an alien's supervised release may be revoked after it is granted for two reasons:

>(i) Revocation of release
>
>>(1) Violation of conditions of release. Any alien who has been released under an order of supervision under this section who violations any of the conditions of release may be returned to custody and is subject to the penalties described in section 243(b) of the Act. […]
>>
>>(2) Revocation for removal. The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. Thereafter, if the alien is not released from custody following the informal interview provided for in paragraph (h)(3) of this section, the provisions of § 241.4 shall govern the alien's continued detention pending removal.

8 C.F.R. § 241.13(4)(i). Respondents do not appear to suggest that Petitioner violated the terms of his supervised release (*see generally* ECF No. 7), ruling out § 241.4(l)(1) or § 241.13(4)(i)(1) as the source of his revocation. Rather, they appear to rely on either § 241.4(l)(2) or § 241.13(4)(ii).

    Sections 241.4(l)(1) and 241.13(3) both explicitly require that "Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien

will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." These requirements for notice and an initial informal interview are not explicitly required in § 241.4(l)(2), but courts have held that the same requirements constrain revocation of release under this second provision as well. *See Diaz*, 2025 WL 2581575 (citing various district court cases that have rejected the government's arguments that these provisions do not apply to § 241.4(l)(2)); *Constantinovici v. Bondi*, No. 3:25-CV-02405-RBM-AHG, 2025 WL 2898985, at *4 (S.D. Cal. Oct. 10, 2025) ("District courts have consistently rejected this argument and held that § 241.4(l)(1)'s procedural requirements apply equally to revocation of a noncitizen's release pursuant to § 241.4(l)(2)."). Thus, as applicable to this provision, the Court will address the issues of notice and informal interview below.

### A. Initial Informal Interview

First, Petitioner argues that Respondents conceded in their return to his Amended Petition that he never received an initial interview. ECF No. 9 at 2. Based upon a review of the briefing and exhibits in this matter, the Court agrees.

Respondents argue that "even if" they failed to conduct the interview required by their own regulation, Petitioner's claim fails because he cannot establish that their failure prejudiced the outcome of his immigration proceeding. ECF No. 7 at 13. The Court is not persuaded that the burden is on an immigration detainee to establish that an interview would materially change the outcome of his case to show that he was entitled to such an interview. Adopting Respondents' position that ICE meeting their own regulations could not affect the outcome of a case, which they make here without any case-specific factual analysis, would call into question whether their regulations satisfy the Due Process Clause's requirement of meaningful notice and opportunity to be heard. *See Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) ("The essence of due process is the requirement that 'a person in jeopardy of a serious loss [be given] notice of the case against him and the opportunity to meet it." (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171-

72 (Frankfurter, J., concurring)); *Ying Fong v. Ashcroft*, 317 F.Supp.2d 398, 403 (S.D.N.Y. 2004) (holding that in the immigration context, "the Constitution requires the government to afford notice of any action against an alien [and] requires an opportunity for the alien to be heard. [] The opportunity to be heard must be meaningful, that is, an opportunity granted at a meaningful time and in a meaningful manner." (internal quotations and citations omitted)). The Court declines to adopt such a position.

As other courts have found, Respondents' failure to provide an informal interview after the revocation of release constitutes a due process violation. M.S.L., 2025 WL 2430267, at *11 (holding that informal interview was not sufficiently "prompt" where it took place twenty-seven days after revocation nand collecting cases); *Constantinovici*, 2025 WL 2898985, at *6 (due process violation where "[n]othing in the record indicates that Petitioner was provided with an interview in connection with the revocation of his release or otherwise afforded an opportunity to respond to the reasons for his re-detention"); *Delkash v. Noem*, No. 5:25-CV-01675-HDV-AGR, 2025 WL 2683988, at *5 (C.D. Cal. Aug. 28, 2025) (same where there was "no evidence that [petitioner] has been afforded an informal or formal interview"); *Phan v. Noem*, No. 3:25-CV-02422-RBM-MSB, 2025 WL 2898977, at *4 (S.D. Cal. Oct. 10, 2025) (finding same where no interview was conducted).

### B. Sufficiency of the Notice

Second, Petitioner argues that the notice provided to him when he was re-detained was not sufficient in explaining the reasoning for the revocation of his supervised release. ECF No. 9 at 7. The notice, dated the day he was re-detained on October 16, 2025, states as follows:

> This letter is to inform you that your case has been reviewed, and it has been determined that you will be kept in the custody of U.S. Immigration and Customs Enforcement (ICE) at this time. This decision has been made based on a review of your official alien file and a determination that there are changed circumstances in your case.

    Based on the above, and pursuant to 8 CFR § 241.4 / 8 C.F.R. §241.13, you are to remain in ICE custody at this time.

ECF No. 7-2 at 13. On the same date, Petitioner was also provided with a Warrant of Arrest which did not provide any further reasoning as to the revocation of supervised release. *Id.* at 11.

    In *M.S.L*, the court reviewed and held deficient a notice that stated "in vague terms, that the revocation decision was 'made based on a review of your case; your existing order of removal; and a determination that there is a significant likelihood of your removal in the reasonably foreseeable future.'" *M.S.L.*, 2025 WL 2430267, at *10. Similarly, in *Perez-Escobar v. Moniz*, No. 25-CV-11781-PBS, 2025 WL 2084102, at *2 (D. Mass. July 24, 2025), a case cited favorably within this circuit by the *Diaz* district court, the court held insufficient a notice that stated "generically that officials had reviewed [petitioner's] 'official alien file' and determined 'there are changed circumstances in your case,' including that he was 'subject to an administratively final order of removal' and that DHS 'determined the purpose of your release has been served and it is appropriate to enforce the removal order.'" Also, in *Delkash*, the court held that "the government cannot conflate the reason for removal with the reason for revocation of release" when the government pointed to the petitioner's "criminal activities" for his re-detention. *Delkash*, 2025 WL 2683988, at *5.

    Compared to the level of details and reasoning provided in these cases, the notice here fares no better. The mere statement that the re-detention decision was based upon a review of Petitioner's file and a finding of changed circumstances in his case is the same statement as at issue in *Perez-Escobar* and is arguably less detailed than the statement at issue in *M.S.L.* Thus, the Court finds that the notice here is insufficient and does not provide Petitioner with adequate reasons for the revocation of his release.

* * * * *

//

//

|   |   |
|---|---|
| 1 | In summary, the Court concludes that Respondents failed to follow their own |
| 2 | regulations in re-detaining Petitioner by failing to: (1) state an adequate basis to revoke |
| 3 | Petitioner's release pursuant to of 8 C.F.R. § 241.4(l)/ 241.13(1); and (2) provide Petitioner |
| 4 | with a "prompt" informal interview so that he could contest the reasons for his revocation, |
| 5 | as required under 8 C.F.R. § 241.4(l) and 241.13(4). Like many other district courts within |
| 6 | this circuit, the Court finds that these failures constitute a violation of Petitioner's due |
| 7 | process rights and justifies his release. *Diaz*, 2025 WL 2581575, at *9; *M.S.L.*, 2025 WL |
| 8 | 2430267, at *12; *Constantinovici*, 2025 WL 2898985, at *7; *Phan*, 2025 WL 2898977, at |
| 9 | *5; *Delkash*, 2025 WL 2683988, at *6. |
| 10 | Accordingly, Petitioner's habeas petition is **GRANTED** on this ground, and |
| 11 | Petitioner is ordered **RELEASED**. In light of the disposition, the Court declines to address |
| 12 | the remaining claims in the Petition. |

### IV. CONCLUSION

For the reasons stated above Petitioner's Writ of Habeas Corpus is **GRANTED**. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to his preexisting Order of Supervision. The Parties are **ORDERED** to file a Joint Status Report no later than **5:00 p.m.** on **November 18, 2025**, confirming that the Petitioner has been released. As Petitioner's release is granted, the Court holds that Petitioner's request for a TRO is **MOOT**. The Clerk of Court is **ORDERED** to **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: November 19, 2025

Honorable James E. Simmons Jr.
United States District Judge